## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re: ) | |
| ) | |
| Lincoln GILL ) | Case No. 15-23947-WIL |
| Andrea Underwood GILL, ) | |
| ) | Chapter 13 |
| Debtors. ) | |
| _____) | |
| ) | |
| Cassandra GILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 16-00510 |
| ) | |
| Lincoln GILL, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## **DEFENDANT SETERUS, INC.'S MOTION FOR SUMMARY JUDGMENT**

SETERUS, INC., as the authorized subservicer for Federal National Mortgage Association, by counsel, moves for summary judgment against the Plaintiff, Cassandra Gill, for the reasons set forth in the accompanying Memorandum of Law.

                                                            Respectfully submitted,

                                                            SETERUS, INC., as the authorized
                                                            Subservicer for Federal National Mortgage
                                                            Association
                                                            By Counsel

FIDELITY NATIONAL LAW GROUP
The Law Division of Fidelity National Title Insurance Company


By:  _____/S/_____
      Michael W. Tompkins, D. Md. Bar No. 14862
      8100 Boone Boulevard, Suite 600
      Vienna, Virginia 22182-2649
      (T) (703) 245-0286
      (F) (703) 821-1618
      Michael.Tompkins@fnf.com
      Counsel for Seterus, Inc.



BWW LAW GROUP, LLC


By:  _____/S/_____
      Christina Williamson, D. Md. Bar No. 16813
      6003 Executive Boulevard, Suite 101
      Rockville, Maryland 20852
      (T) (301) 961-6555
      (F) (301) 961-6491
      Christina.Williamson@bww-law.com
      Counsel for Seterus, Inc.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Lincoln GILL** | ) | Case No. 15-23947-WIL |
| **Andrea Underwood GILL,** | ) | |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |
| **Cassandra GILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-00510 |
| | ) | |
| **Lincoln GILL,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SETERUS, INC.'S MOTION FOR SUMMARY JUDGMENT**

In support of its Motion for Summary Judgment, Defendant Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association ("Seterus"), states as follows:

**I.   Introduction.**

Seterus holds an undisputed lien on certain real property commonly known as 4209 91st Place, Lanham, Maryland 20706 (the "Property" at issue in this adversary proceeding). Its lien was a refinance deed of trust dated November 2, 2007 and recorded among the Land Records of Prince George's County, Maryland in Liber 28991 beginning at Folio 85. Seterus' lien refinanced a previous refinance deed of trust dated January 15, 2007; which in turn refinanced a previous deed of trust dated March 19, 2003; which in turn refinanced a purchase-money deed of

trust dated April 24, 2001 – the same date on which Debtor Lincoln Gill took title to the Property.

On June 18, 2004, Plaintiff Cassandra Gill received a money judgment against Lincoln Gill in *Gill v. Gill*, Case No. CAD03-09960 in the Prince George's County Circuit Court. At that time, Lincoln Gill was the debtor in an active bankruptcy case in this Court, *In re Gill*, 04-20368-TJC. Accordingly, that judgment was void. Cassandra Gill has now obtained a ruling from Judge Catliota in 04-20368-TJC, granting an annulment of the automatic stay in that case, but Seterus was not a party to that case. The date of the order of annulment was March 30, 2018 – ten years, four months, and four weeks after Seterus' deed of trust was executed. Notwithstanding the obvious inequities of her claim, Plaintiff is asking that her judgment be given priority over Seterus' lien. Seterus moves for summary judgment.

**II.     Applicable Rules.**

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

> Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--
> > (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> > (2) order that any lien securing such a subordinated claim be transferred to the estate.

11 U.S.C. § 510(c).

**III.   Statement of Undisputed Facts.**

Seterus respectfully submits the following undisputed facts in support of its Motion for Summary Judgment.

    A.    By Deed dated April 24, 2001 and recorded among the Land Records of Prince George's County, Maryland (the "Land Records") on May 14, 2001 in Liber 14618 beginning at Folio 561 (the "First Vesting Deed"), Professional Real Estate Inc. conveyed the Property to Defendant Lincoln Gregory Gill. *See* Exhibit 1.

    B.    By Deed of Trust dated April 24, 2001 and recorded among the Land Records on May 14, 2001 in Liber 14618 beginning at Folio 565 (the "Purchase Money Deed of Trust"), Defendant Gill conveyed the Property to Everett L. Anschutz, Jr., Trustee for the benefit of Legacy Financial Group, Inc. as security for a purchase-money loan in the original principal amount of one hundred twenty-seven thousand seven hundred eighty-eight dollars and no cents ($127,788.00). *See* Exhibit 2.

    C.    By Assignment of Deed of Trust dated December 11, 2001 and recorded among the Land Records on December 19, 2001 in Liber 15287 beginning at Folio 701 (the "Purchase Money First Assignment"), Legacy Financial Group, Inc. assigned the Purchase Money Deed of Trust to First Home Mortgage. *See* Exhibit 3.

    D.    By Assignment of Deed of Trust dated December 11, 2001 and recorded among the Land Records on December 19, 2001 in Liber 15287 beginning at Folio 703 (the "Purchase Money Second Assignment"), First Home Mortgage assigned the Purchase Money Deed of Trust to Bank of America, N.A. *See* Exhibit 4.

    E.    By Deed of Trust dated November 26, 2001 and recorded among the Land Records on December 28, 2001 in Liber 15314 beginning at Folio 97 (the "First Refinance Deed of Trust"), Defendant Lincoln Gill conveyed the Property to John

Viterbo, Trustee for the benefit of Chase Manhattan Mortgage Corporation as security for a refinance loan in the original principal amount of one hundred twenty-seven thousand five hundred eighty-five dollars and no cents ($127,585.00).  *See* Exhibit 5.

      F.      As a result of payment out of the proceeds of the loan secured by the First Refinance Deed of Trust, the Purchase Money Deed of Trust was marked satisfied by Certificate of Satisfaction dated January 7, 2002 and recorded among the Land Records on January 18, 2002 in Liber 15385 at Folio 656 (the "Purchase Money Certificate of Satisfaction").  *See* Exhibit 6.

      G.      By Refinance Deed of Trust dated March 19, 2003 and recorded among the Land Records on June 2, 2003 in Liber 17488 beginning at Folio 251 (the "Second Refinance Deed of Trust"), Defendant Lincoln Gill conveyed the Property to Donna M. Hughes, Trustee for the benefit of Chase Manhattan Mortgage Corporation, as security for a refinance loan in the original principal amount of one hundred twenty-seven thousand eight hundred thirty-nine dollars and no cents ($127,839.00).  *See* Exhibit 7.

      H.      As a result of payment out of the proceeds of the loan secured by the Second Refinance Deed of Trust, the First Refinance Deed of Trust was marked satisfied by Certificate of Satisfaction dated April 9, 2003 and recorded among the Land Records on May 1, 2003 in Liber 17294 at Folio 40 (the "First Refinance Certificate of Satisfaction").  *See* Exhibit 8.

      I.      By Deed dated June 21, 2005 and recorded among the Land Records on December 6, 2005 in Liber 23636 beginning at Folio 539 (the "Second Vesting Deed"), Defendant Lincoln Gill conveyed the Property to Lincoln Gill and Andrea Gill, husband and wife, as tenants by the entirety.  *See* Exhibit 9.

J. By Refinance Deed of Trust dated January 15, 2007 and recorded among the Land Records on April 3, 2007 in Liber 26954 beginning at Folio 416 (the "Third Refinance Deed of Trust"), Defendants Lincoln Gill and Andrea Gill conveyed the Property to David N. Prensky, Trustee for the benefit of Fidelity Mortgage, a division of Delta Funding Corporation, as security for a refinance loan in the original principal amount of two hundred fourteen thousand three hundred dollars and no cents ($214,300.00). *See* Exhibit 10.

K. As a result of payment out of the proceeds of the loan secured by the Third Refinance Deed of Trust, the Second Refinance Deed of Trust was marked satisfied by Certificate of Satisfaction dated January 25, 2007 and recorded among the Land Records on April 3, 2007 in Liber 27529 at Folio 624 (the "Second Refinance Certificate of Satisfaction"). *See* Exhibit 11.

L. By Refinance Deed of Trust dated November 2, 2007 and recorded among the Land Records on November 30, 2007 in Liber 28991 beginning at Folio 85 (the "Fourth Refinance Deed of Trust"), Defendants Lincoln Gill and Andrea Gill conveyed the Property to Mitchell B. Morris, Trustee for the benefit of Worldwide Financial Resources, Inc. as security for a refinance loan in the original principal amount of two hundred twenty-four thousand five hundred dollars and no cents ($224,500.00). *See* Exhibit 12.

M. As a result of payment out of the proceeds of the loan secured by the Fourth Refinance Deed of Trust, the Third Refinance Deed of Trust was marked satisfied by Certificate of Satisfaction dated November 12, 2007 and recorded among the Land

Records on December 3, 2007 in Liber 29036 at Folio 648 (the "Third Refinance Certificate of Satisfaction"). *See* Exhibit 13.

N. By Assignment of Deed of Trust dated June 18, 2013 and recorded among the Land Records on June 25, 2013 in Liber 34893 beginning at Folio 54 (the "Fourth Refinance First Assignment"), Mortgage Electronic Registration Systems, Inc., as nominee for Worldwide Financial Resources, Inc. assigned the Fourth Refinance Deed of Trust to CitiMortgage, Inc. *See* Exhibit 14.

O. By Assignment of Deed of Trust dated February 11, 2014 and recorded among the Land Records on February 27, 2014 in Liber 35694 at Folio 107 (the "Fourth Refinance Second Assignment"), CitiMortgage, Inc. assigned the Fourth Refinance Deed of Trust to Federal National Mortgage Association. *See* Exhibit 15.

P. Lincoln Gill and Andrea Gill applied for the loan at issue in an ordinary, arms-length transaction. *See* Exhibit 16.

Q. For over ten years, Plaintiff Cassandra Gill never attempted to collect on her alleged judgment, even when she allegedly knew nothing of Lincoln Gill's 2004 bankruptcy case, and even though she had strong emotional and financial reasons to pursue collection activities against Lincoln Gill. *See* Exhibit 17.[1]

### IV. Analysis.

One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving

---

[1] Although Lincoln Gill's affidavit contains a claim that, as of the date of the affidavit (February 7, 2017), Cassandra Gill had never attempted any execution against him, the docket in the state-court case reflects issuance of a writ of execution on August 19, 2015. The return of service only reflects service by posting, so it is possible he simply never got served with that writ.

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). The movant must establish that there are no material facts at issue and that it is entitled to judgment as a matter of law. *McLean, Koehler, Sparks & Hammond v. Hildebrand (In re Hildebrand),* 230 B.R. 72, 79 (Bankr. D. Md. 1999) (citing *Celotex,* 477 U.S. at 322-323). Once a motion for summary judgment is made and supported as provided in the Rule, the nonmoving party must produce sufficient evidence to show that there is a genuine issue for trial. *In re Hildebrand,* 230 B.R. at 79. Summary judgment will be granted if, taking the record as a whole, a reasonable jury could not possibly return a verdict in favor of the nonmoving party. *Id.* at 74 (citing *Matsushita,* 475 U.S. at 587; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Here, Plaintiff is attempting to establish equitable subrogation of her 2004 judgment – one rendered during a pending bankruptcy case – over the 2007 lien of Seterus, which was a refinance of a 2007 refinance of a 2003 refinance of a 2001 purchase-money deed of trust. *See generally* Adv. Compl. (ECF No. 1). On the undisputed facts, however, Plaintiff's claim should be dismissed.

  **A.**  **Plaintiff Is Not Entitled to Equitable Subrogation of Her Lien over the Lien of Seterus.**

Plaintiff's Adversary Complaint asks that this Court subordinate Seterus' deed of trust to her judgment in accordance with 11 U.S.C. § 510(c)(1). *See* Compl. ¶ 56-57 & at 13 (citing "Inequitable conduct by the Lender").

> Equitable subordination is a long-standing doctrine which enables a bankruptcy court, as a court of equity, to subordinate the claim of one creditor to those of other creditors in circumstances where the creditor sued has engaged in some type of inequitable conduct which has secured for it an unfair advantage or which has resulted in injury to other creditors of the debtor. . . .
> The statutory authority for equitable subordination is 11 U.S.C. § 510(c) which provides that a court may

7

> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.
>
> In order to establish that subordination is an appropriate remedy, the Trustee in this case must point to significant, probative facts in the record demonstrating the following three elements: (1) that Equitable engaged in some type of inequitable conduct; (2) that the misconduct conferred an unfair advantage on Equitable or resulted in injury to other creditors of FAMCO II; and (3) that equitable subordination here is not inconsistent with the provisions of the Bankruptcy Code.
>
> Proof of Equitable's participation in actual fraud is not essential; any conduct, even if technically lawful, which violates rules of fair play or good conscience can be deemed inequitable. As the Trustee correctly acknowledges, he must present evidence of conduct which "shocks the conscience" of this Court.

*Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 729-30 (D. Md. 1989) (citations omitted), *aff'd mem.*, 912 F.2d 464 (4th Cir. 1990) (unpublished table opinion).

Plaintiff does not even pass the first test. The undisputed facts of the case are that Seterus purchased a loan secured by a deed of trust encumbering the Debtors' Property; and that the deed of trust in question was granted in exchange for a refinance loan. *See* Exhibits 12, 14, 15. Nothing Seterus or its predecessors-in-title did can be said to "shock the conscience" of the Court.

The only alleged misconduct cited by Plaintiff in her papers is that Seterus failed to notice that she appeared to have received a judgment in 2004. *See, e.g.*, Adv. Compl. ¶¶ 47 (alleging that Seterus had actual knowledge of Lincoln Gill's 2004 bankruptcy), 48 (alleging that Seterus was on notice of Plaintiff's judgment), 49 (alleging that Lender knew or should have known that Plaintiff had no notice of the 2004 bankruptcy), 51 (alleging that Lender recorded its deed of trust "with full knowledge of the Judgment, lack of notice to Creditor Cassandra in the

8

2004 Bankruptcy, and issue regarding Andrea Gill's ownership"), 52 (alleging that Lender has unclean hands). There is, of course, no evidence of any of those allegations. But, even if Plaintiff were able to prove those allegations, as a matter of law they would not constitute "inequitable conduct" within the meaning of § 510(c). *In re Pacific Express, Inc.*, 69 B.R. 112, 117 (Bankr. 9th Cir. 1986) (burden on party seeking equitable subordination under § 510 of claims by non-insiders was to prove "gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others" (citing *In re Teltronics Svcs., Inc.*, 29 B.R. 139, 169 (Bankr. E.D.N.Y. 1983)). Here, Seterus bought a loan, *see* Exhs. 14-15, and its predecessor in title made a consumer loan to an arms-length borrower. *See* Exh. 16. Nothing in this transaction even remotely approaches fraud, overreaching, or spoliation. Indeed, the only inequitable conduct appears to be that of Plaintiff, who sat on her judgment for over a decade before attempting to enforce it.

Although it is unnecessary for this Court to reach the issues, Plaintiff also fails the remaining two elements of equitable subordination. She can point to no injury done to her by Seterus' lien, or by the loan it secures remaining in first position on the subject Property. Seterus' lien was one of a series of refinances obtained by the Debtors, just as many homeowners have done. But Seterus gained no unfair advantage over Plaintiff, who is left with her judgment in exactly the same position it has been in all this time, including when it was first (albeit invalidly) obtained: in second position to the refinance of a purchase-money mortgage. The Second Refinance Deed of Trust "rode through" the 2004 bankruptcy, *In re Keeler*, 257 B.R. 442, 448 (Bankr. D. Md. 2001); thus, Plaintiff's judgment was always going to be in second position, even if she had obtained relief from the automatic stay at the time.

On the undisputed facts of this case, Plaintiff cannot demonstrate that she is entitled to equitable subordination of her judgment. Her case should be dismissed.

**B.    Seterus Is Entitled to Equitable Subrogation of Its Lien over the Judgment Lien of Plaintiff.**

It is undisputed that Seterus' lien paid off a prior loan that paid off a prior loan that predated Plaintiff's judgment. It is also undisputed that neither Seterus nor any of its predecessor lenders was an officious intermeddler; rather, all the loans made to Lincoln Gill and Andrea Gill were made to protect the lenders' rights, not as volunteers. Accordingly, Seterus is entitled to be treated under the Maryland doctrine of equitable subrogation. *Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 554, 72 A.3d 185, 196-96 (2013).

> We have held previously that the elements of legal subrogation are
> 1) That there is a debt which a party other than the subrogee owes and,
> 2) That the subrogee paid the debtor's loan to protect his or her rights, not as a volunteer.

*Id.*

On the facts of *Fishman*, Seterus' predecessor paid off a previous loan that encumbered the Property and was not a volunteer. Moreover, even if the Court credits Plaintiff's claim that Seterus' predecessor should have found her judgment and evaluated the 2004 bankruptcy to conclude that there was a lack of notice to Cassandra Gill, constructive notice does not bar equitable subrogation in Maryland. *Id.* at 556, 72 A.3d at 198 ("Although Petitioners had constructive notice of another's claim on the land, constructive notice alone does not defeat the application of equitable subrogation. As we stated in *Levenson,* equitable subrogation applies in the 'absence of actual knowledge on the part of the subrogation claimant concerning the intervening lien'"). Accordingly, because Plaintiff has only supposition to support her claim of

10

actual knowledge, equitable subordination is appropriate, and the Court should recognize Seterus' lien as superior in priority to Plaintiff's.

### C. Plaintiff's Claim Is Barred by Laches.

Plaintiff sat on her rights for over a decade before attempting to enforce the 2004 judgment. *See* Exh. 17. During that time, the value of Debtors' Property increased in value, and additional lenders came on the scene. Even after Seterus purchased the deed of trust at issue, Plaintiff waited more than seven years before attempting even one execution. *See* Exh. 17. That was without question an unduly long time to do nothing, particularly where – as Lincoln Gill has testified – she was engaged in combative litigation with him and could have executed on her judgment at any time.

"Laches bars an action where there has been 'both an inexcusable delay and prejudice' to the party asserting the defense." *Department of Human Resources ex rel. Duckworth v. Kamp*, 180 Md. App. 166, 205, 949 A.2d 43, 66 (2008). Here, there have been both.

> On the other hand, "a court of equity will not enforce a contract specifically when the purchaser has delayed many years before seeking to enforce it, especially when the property has greatly increased in value, or there are circumstances which would make such a decree inequitable." Soehnlein v. Pumphrey, 183 Md. 334, 339, 37 A.2d 843 (1944). Accord Sealock v. Hackley, 186 Md. 49, 53, 45 A.2d 744 (1946). See also Williston, supra, at § 67:20 (stating that, "[i]f the plaintiff was in default or guilty of gross laches, and the value of the property had materially changed, specific performance may be and generally is denied").

*Cattail Assocs., Inc. v. Sass*, 170 Md. App. 474, 500-01, 907 A.2d 828, 844 (2006).

Plaintiff waited over a decade before even trying to enforce her judgment. *See* Exh. 17; *see also* Adv. Compl. Exh. 1 (detailing state-court docket with no attempts at execution until

11

July 10, 2015).[2]   During that time, Seterus bought the loan, *see* Exh. 15; Seterus' immediate predecessor bought the loan before selling it to Seterus, *see* Exh. 14; Worldwide Financial Resources, Inc. refinanced the previous loan, *see* Exh. 12; Fidelity Mortgage a division of Delta Funding Corporation refinanced the 2003 refinance deed of trust, *see* Exh. 10; and Delta Funding Corporation went bankrupt, *see* Exhs. 18-19.

An inordinate amount of time has passed with no action by Plaintiff to enforce her judgment.  During that time, memories have faded, documents have been lost, and necessary information has disappeared.  Plaintiff should not be permitted to enforce her lien over Seterus at this late date, when simple enforcement of her lien at an earlier date would have prevented the position in which the parties now find themselves.  Plaintiff's claim should be barred under the doctrine of laches.

Plaintiff's claim should be dismissed, and the Court should recognize Seterus' claim as superior in position to that of Plaintiff.

### V.   Conclusion.

For the foregoing reasons, Defendant Seterus, Inc., as the authorized subservicer for Federal National Mortgage Association respectfully requests that this Court grant its Motion and enter summary judgment in its favor against Plaintiff Cassandra Gill.

>  Respectfully submitted,
>
>  SETERUS, INC., as the authorized Subservicer for Federal National Mortgage Association
>  By Counsel

---

[2]   Note that, even after she filed the renewal of her judgment on May 20, 2015, she still waited almost two months before asking for a writ of execution.  *See* Adv. Compl. Exh. 1.

FIDELITY NATIONAL LAW GROUP
The Law Division of Fidelity National Title Insurance Company


By:          /S/
    Michael W. Tompkins, D. Md. Bar No. 14862
    8100 Boone Boulevard, Suite 600
    Vienna, Virginia 22182-2649
    (T) (703) 245-0286
    (F) (703) 821-1618
    Michael.Tompkins@fnf.com
    Counsel for Seterus, Inc.


BWW LAW GROUP, LLC


By:          /S/
    Christina Williamson, D. Md. Bar No. 16813
    6003 Executive Boulevard, Suite 101
    Rockville, Maryland 20852
    (T) (301) 961-6555
    (F) (301) 961-6491
    Christina.Williamson@bww-law.com
    Counsel for Seterus, Inc.